UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL GREENE #251997,

    Plaintiff,

v.                                                                 Case No. 2:16-cv-44
                                                              HON. GORDON J. QUIST

R. MILLER, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Michael Greene, an inmate in the Michigan Department of Corrections, filed this *pro se* civil rights action against Corrections Officer R. Miller and Prison Counselor B. Butler. Plaintiff asserts a retaliation claim against Defendant Miller and an equal protection claim against Defendant Butler.[1] Defendants have moved for summary judgment on the ground that Plaintiff failed to exhaust his administrative remedies. (ECF No. 10.) Plaintiff has responded. (ECF No. 15, 16.) This matter is now ready for decision.[2]

Plaintiff's allegations arise from a series of events occurring shortly after he was transferred to Chippewa Correctional Facility (URF). On March 19, 2014, Plaintiff met with Defendant Miller to receive his property. During this meeting, Defendant Miller informed Plaintiff that his broken television, guitar amp, and weight lifting gloves were considered contraband at URF. Plaintiff told Defendant Miller that the items were legally purchased,

---

[1] Plaintiff initially asserted a due process claim. However, the due process claim was previously dismissed. (ECF No. 4.)
[2] Plaintiff has also filed a motion for summary judgment pursuant to Fed R. Civ. P 56. (ECF No. 17, 18.) Defendants have not yet responded. Therefore, this Report and Recommendation will addresses only the exhaustion issue.

therefore, not contraband. Defendant Miller explained to Plaintiff that he would have to work it out with Defendant Butler. Plaintiff was then issued a contraband removal record.

On March 20, 2014, Plaintiff asked Defendant Butler if he knew any vendors that would repair his broken television. Defendant Butler responded: "I don't know anything about that, contact the Property Room." Over the next couple of weeks, Plaintiff attempted to contact the property room staff. However, Plaintiff never received a response.

On April 15, 2014, Plaintiff again asked Defendant Butler about his property. Defendant Butler responded that he could not do anything because he never received any paperwork on Plaintiff's property. At this point, Plaintiff expressed concern that his property may be destroyed if it goes unclaimed for 30 days. Defendant Butler replied: "well, I guess you better figure something out." Plaintiff asked if he should file a grievance. Defendant Butler responded that filing a grievance would not be a good idea because "people tend to take those things personally around here." Plaintiff asked about his alternatives and Defendant Butler reiterated, "like I said, figure it out." Plaintiff proceeded to file a grievance regarding his property.

As part of an investigation into Plaintiff's grievance, Defendant Miller was interviewed regarding Plaintiff's property on April 24, 2014. After the interview, Defendant Miller issued a Notice of Intent to conduct an administrative hearing, which stated that Plaintiff's property should be destroyed because it was contraband. Plaintiff alleges that Defendant Miller determined that the property should be destroyed in response to Plaintiff filing a grievance. Plaintiff proceeded to write letters complaining that prison policy was being violated to the administrative assistant and the warden at URF, but never received a response.

On May 9, 2014, Defendant Butler called Plaintiff into his office and asked where he wanted to have his property sent. Plaintiff argued that he should not have to send any of the property out because the property was not contraband. In addition, Plaintiff stated that even if it was contraband, Policy Directive 04.07.112 mandated that the contraband be destroyed instead of sent out. Defendant Butler then stated: "well you should have thought about that before you started writing grievances." When Plaintiff continued to refuse to have his property sent out, Defendant Butler indicated that it would be destroyed. Plaintiff also asked Defendant Butler again about a vendor that could repair his broken television. Defendant told Plaintiff that "we don't have a vendor for that here." Plaintiff then responded that a fellow inmate had just sent his television out for repair. Defendant Butler said, "well you're not him are you?" When Plaintiff asked what was the difference between himself and the fellow inmate, Defendant Butler told him to look in the mirror. Defendant Butler also said, "didn't they tell you when you got here that URF stands for you are fucked?" Plaintiff alleges that he is African-American and the fellow inmate is Caucasian.

Based on these facts, Plaintiff asserts a retaliation claim against Defendant Miller and an equal protection claim against Defendant Butler. Defendants argue that Plaintiff failed to properly exhaust any grievance on these claims. Therefore, Defendants request that this case be dismissed. Plaintiff argues that he exhausted all available administrative remedies on his equal protection claim against Defendant Butler because he attempted to grieve the issue but it was rejected as a duplicative grievance. Moreover, Plaintiff argues that he exhausted all available administrative remedies on his retaliation claim against Defendant Miller because he filed a grievance on this claim, but never received a response to the grievance.

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-216 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United*

*States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently

unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-60 (2016).

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original).[3] The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T,

---

[3] In *Holoway v. McClaren*, No. 15-2184 (6th Cir., April 7, 2016) (unpublished), the Sixth Circuit concluded that where a plaintiff fails to name each defendant in his grievance, the un-named defendants may not be dismissed for failure to exhaust grievance remedies if the MDOC did not reject the grievance under the policy requiring a grievant to name each individual involved. The Sixth Circuit stated: "Because MDOC officials addressed the merits of Holloway's grievance at each step and did not enforce any procedural requirements, Holloway's failure to identify the defendants named in this lawsuit and to specify any wrongdoing by them in his grievances cannot provide the basis for dismissal of his complaint for lack of exhaustion." *Id*. at 3. The Sixth Circuit failed to provide any guidance as to how the MDOC might determine who the plaintiff intended to name in a future federal lawsuit at the time the plaintiff filed his Step I grievance.

BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved . . . ." *Id.* at ¶ S.

In this case, Plaintiff exhausted four grievances through Step III of the grievance process. Two of the grievances were filed on May 9, 2014. In Grievance 14-05-1500-07a, Plaintiff alleged that his guitar was destroyed contrary to policy and demanded reimbursement. PageID.83. In Grievance 14-05-1501-07a, Plaintiff alleged that his weight lifting gloves were destroyed contrary to policy and demanded reimbursement. PageID.78. Neither of these two grievances exhaust Plaintiff's retaliation claim or equal protection claim.

Plaintiff filed two more grievances on May 12, 2014. In Grievance 14-05-1505-07a, Plaintiff alleged that Defendant Butler destroyed his property "without due process of law." PageID.73. In Grievance 14-05-1506-28a, Plaintiff alleged that Defendant Butler violated his right to equal protection because Plaintiff was not allowed to send his television to be fixed while other prisoners were allowed to. PageID.88. However, this grievance was rejected as duplicative to Grievance 14-05-1505-07a. PageID.89. At Stage II and Stage III, Plaintiff argued that the two grievances contained different issues—one grievance addressed only a due process violation, and

one grievance addressed only an equal protection violation. PageID.86. The rejection was upheld at Stage II and Stage III. PageID.85, 87.

First, Defendants assert that Plaintiff did not exhaust his equal protection claim against Defendant Butler. Plaintiff attempted to grieve this issue in Grievance 14-04-1506-28a, but it was rejected as duplicative. This case is similar to *Johannes v. Washington*, No. 14-11691, 2016 WL 1253266, at *6 (E.D. Mich. Mar. 31, 2016), where the court determined that a grievance rejected as duplicative does not necessarily mean that it is not properly exhausted as a matter of law. Instead, the court found that "to carry their summary-judgment burden, Defendants must compare the issues grieved in the first grievance to those grieved in the [] allegedly-duplicate grievances and show that every reasonable jury would think the rejections were proper." *Id.*

Defendants argue that Grievance 14-05-1505-07a did not exhaust Plaintiff's equal protection claim because Plaintiff only addressed the alleged due process violation. Defendants next argue that Grievance 14-04-1506-28a does not exhaust the equal protection claim because Plaintiff's grievance was rejected as duplicative to Grievance 14-05-1505-07a. Defendants' arguments seem to contradict each other. On one hand, Plaintiff failed to exhaust a completely separate issue in Grievance 14-05-1505-07a. On the other hand, Plaintiff could not file a second grievance because the issue was "duplicative" of the first issue.

The reasoning behind rejecting the second grievance as duplicative becomes even less clear when one considers the two grievances Plaintiff filed on May 9, 2014. As Defendants stated in their brief, those grievances "also address the due process claim only, with references to the 'Prisoner Benefit Fund' and the 'State Administrative Board Prisoner Policy

Reimbursement.'"[4]  PageID.54.  It does not follow logically that the three grievances alleging due process violations were allowed to proceed, but the one grievance alleging an equal protection violation was rejected as duplicative.  Therefore, in the opinion of the undersigned, Defendants failed to show that "every reasonable jury would think the rejection[ was] proper."  *Johannes v. Washington*, No. 14-11691, 2016 WL 1253266, at *6 (E.D. Mich. Mar. 31, 2016).

Defendants also attempt to justify rejecting Grievance 14-04-1506-28a as duplicative because it is analogous to claim preclusion.  Defendants argue that Plaintiff cannot keep filing multiple grievances over the same set of facts, merely changing the legal theory or claim.  Defendants do not cite any case that applied claim preclusion to the filing of grievances.  In addition, claim preclusion "refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated . . . ."  *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984).  Although Defendants acknowledge that a grievance is not a "judgement," they state that the same reasoning applies.  The reasoning behind claim preclusion cannot apply to a case where the plaintiff filed multiple grievances advancing different legal theories on the same day.  Based on the forgoing reasons, in the opinion of the undersigned, there is a genuine issue of fact as to whether Plaintiff exhausted all available administrative remedies on his equal protection claim against Defendant Butler.

Second, Defendants argue that Plaintiff did not exhaust his retaliation claim against Defendant Miller.  Plaintiff argues that he exhausted all *available* remedies because he attempted to file a grievance against Defendant Miller.  In support of this argument, Plaintiff has attached a copy of the grievance that he attempted to file against Defendant Miller.  PageID.114.  Plaintiff

---

[4] Defendants cited the incorrect grievances in their brief.  The two grievances that mention the "Prisoner Benefit Fund" and "the State Administrative Board Prisoner Policy Reimbursement" are Grievance 14-05-1501-07a and Grievance 14-05-1500-07a.  PageID.78, 83.

alleges that he never received a response to this grievance. Plaintiff further alleges that he wrote to the grievance coordinator and the warden regarding this grievance, but never received a response. Defendants failed to file a reply brief or present any evidence contradicting Plaintiff's argument that he attempted to file a grievance against Defendant Miller. Therefore, in the opinion of the undersigned, there is a genuine issue of fact as to whether Plaintiff exhausted all available administrative remedies on his retaliation claim against Defendant Miller. *See Ross v. Blake*, 136 S.Ct. 1850, 1859-60 (2016).

Accordingly, it is recommended that Defendants' motion for summary judgment (ECF No. 10.) be denied.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: October 24, 2016

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE