UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL GREENE,

    Plaintiff,

v.                                                    Case No.  2:16-cv-44
                                                    HON. GORDON J. QUIST

R. MILLER, et al.,

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by state prisoner Michael Greene, pursuant to 42 U.S.C. § 1983 against Michigan Department of Corrections employees Robert Miller and Barry Butler.  Defendants filed a motion for summary judgment (ECF No. 37) arguing that Plaintiff's retaliation claims and equal protection claim should be dismissed.  Plaintiff filed a response (ECF No. 48).

The Court has previously summarized the facts:

> Plaintiff's allegations arise from a series of events occurring shortly after he was transferred to Chippewa Correctional Facility (URF). On March 19, 2014, Plaintiff met with Defendant Miller to receive his property.  During this meeting, Defendant Miller informed Plaintiff that his broken television, guitar amp, and weight lifting gloves were considered contraband at URF.  Plaintiff told Defendant Miller that the items were legally purchased, therefore, not contraband.  Defendant Miller explained to Plaintiff that he would have to work it out with Defendant Butler.  Plaintiff was then issued a contraband removal record.
>
> On March 20, 2014, Plaintiff asked Defendant Butler if he knew any vendors that would repair his broken television.  Defendant Butler responded: "I don't know anything about that, contact the Property Room."  Over the next couple of weeks, Plaintiff attempted to contact the property room staff.  However, Plaintiff never received a response.

On April 15, 2014, Plaintiff again asked Defendant Butler about his property. Defendant Butler responded that he could not do anything because he never received any paperwork on Plaintiff's property.  At this point, Plaintiff expressed concern that his property may be destroyed if it goes unclaimed for 30 days. Defendant Butler replied: "well, I guess you better figure something out."  Plaintiff asked if he should file a grievance. Defendant Butler responded that filing a grievance would not be a good idea because "people tend to take those things personally around here." Plaintiff asked about his alternatives and Defendant Butler reiterated, "like I said, figure it out."  Plaintiff proceeded to file a grievance regarding his property.

As part of an investigation into Plaintiff's grievance, Defendant Miller was interviewed regarding Plaintiff's property on April 24, 2014.  After the interview, Defendant Miller issued a Notice of Intent to conduct an administrative hearing, which stated that Plaintiff's property should be destroyed because it was contraband. Plaintiff alleges that Defendant Miller determined that the property should be destroyed in response to Plaintiff filing a grievance. Plaintiff proceeded to write letters complaining that prison policy was being violated to the administrative assistant and the warden at URF, but never received a response.

On May 9, 2014, Defendant Butler called Plaintiff into his office and asked where he wanted to have his property sent.  Plaintiff argued that he should not have to send any of the property out because the property was not contraband.  In addition, Plaintiff stated that even if it was contraband, Policy Directive 04.07.112 mandated that the contraband be destroyed instead of sent out. Defendant Butler then stated: "well you should have thought about that before you started writing grievances."  When Plaintiff continued to refuse to have his property sent out, Defendant Butler indicated that it would be destroyed. Plaintiff also asked Defendant Butler again about a vendor that could repair his broken television. Defendant told Plaintiff that "we don't have a vendor for that here." Plaintiff then responded that a fellow inmate had just sent his television out for repair. Defendant Butler said, "well you're not him are you?"  When Plaintiff asked what was the difference between himself and the fellow inmate, Defendant Butler told him to look in the mirror. Defendant Butler also said, "didn't they tell you when you got here that URF stands for you are fucked?" Plaintiff alleges that he is African-American and the fellow inmate is Caucasian.

2

(ECF No. 20, PageID.146-148.)

Plaintiff filed a motion for summary judgment on his retaliation claim against Defendant Miller and his equal protection claim against Defendant Butler.  Plaintiff's motion was denied because there existed genuine issues of material fact on both of his claims.  Defendant Miller asserted that issues of fact existed regarding whether the Notice of Intent constitutes an adverse action, whether Plaintiff's property was contraband under MDOC policy, and whether Defendant Miller was motivated by Plaintiff's grievance.   In addition, the Court found issues of fact regarding whether Defendant Butler had made racial comments and whether he had acted with a discriminatory purpose.  (Order Adopting Report and Recommendation, ECF No. 28).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477

U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff alleges that Defendant Miller issued a Notice of Intent to destroy Plaintiff's property only after Plaintiff filed a grievance against him. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*; *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

A prisoner's grievance activity is protected conduct.  *See Campbell*, 250 F.3d at 1037 (finding that the filing of a prison grievance is constitutionally protected conduct).  Plaintiff first met with Defendant Miller on March 19, 2014, soon after he transferred to the Chippewa Correctional Facility.  At that time, Defendant Miller informed Plaintiff that the non-working television, guitar amp, and weight lifting gloves with straps were considered contraband under MDOC Policy Directive 04.07.112.  Plaintiff had not filed a grievance before Defendant Miller provided Plaintiff with the Contraband Removal Record.  (Complaint, ECF No. 1-1, PageID.13). Defendant Miller states that "contraband is defined as any personal property which is not

4

specifically authorized by this policy, authorized property which is in excess of allowable limits, authorized property which has been altered, authorized property which was obtained or sent from an unauthorized source . . ." MDOC Policy Directive 04.07.112 CC.  (ECF No. 38-2, PageID.278).

On April 24, 2014, Defendant Miller issued a form Notice of Intent to Conduct an Administrative Hearing.  Plaintiff asserts that Defendant Miller's act of issuing the Notice of Intent to Conduct an Administrative Hearing was in retaliation for Plaintiff's April 15, 2014, grievance regarding Defendant's Butler's statement that he was not aware of the issue and that Plaintiff needed to contact the property room.  Plaintiff's grievance stated that there was no reason for Defendant Miller to separate his property.  (ECF No. 48-3, PageID.425).  The grievance response indicated that Defendant Miller had issued a Notice of Intent to Conduct an Administrative Hearing and the property was secured awaiting the hearing.  (ECF No. 48-5, PageID.427).

> The Step I response summary, dated April 25, 2014, stated:
>
> Prisoner Greene refused to sign off on this grievance even though all of the issues listed there within are resolved.  His property is in the unit awaiting a hearing.  He has a copy of the NOI and it has been reviewed with him.  Prisoner Greene will be afforded a hearing with [h]is Prison Counselor.  I notified prisoner Greene that if [he] has other issues after the hearing to go through the proper channel in resolving them.

(ECF No. 48-5. PageID.427.)

In the opinion of the undersigned, Plaintiff cannot support a retaliation claim against Defendant Miller.  Defendant Miller confiscated Plaintiff's property on March 19, 2014, and Plaintiff was told that he would have to work the issue out with Defendant Butler.  At that time, Defendant Miller prepared a Contraband Removal Record.  Plaintiff had not engaged in any prior protected conduct before Defendant Miller confiscated his property.  Plaintiff complained in

5

a grievance that he did not have a hearing on his property. It appears possible that Defendant Miller issued a Notice of Intent to Conduct an Administrative Hearing in response to Plaintiff's grievance. In the opinion of the undersigned, the Notice of Intent to Conduct an Administrative Hearing was not an adverse action, because it only provided Plaintiff with the opportunity to have a hearing. The exact opportunity that Plaintiff requested in his grievance. The notice did not change the disposition of the confiscated property. In the opinion of the undersigned, Plaintiff has failed to show that Defendant Miller took adverse action against Plaintiff in response to the filing of a grievance.

Plaintiff who is African American asserts that Defendant Butler violated his equal protection rights because he was treated differently than at least one white prisoner. Plaintiff alleges that Defendant Butler refused to allow Plaintiff to send his television set outside of the prison for repair, but at least one white prisoner was allowed to send his television set outside of the prison for repair. When Plaintiff asked why prisoner Harper was allowed to send his television for repair when Plaintiff was not allowed, Defendant Butler allegedly stated "All you have to do is look in the mirror."

Defendant Butler held the hearing on the Notice of Intent on May 9, 2014. At that time, Defendant Butler informed Plaintiff that the guitar amp and weight lifting gloves were contraband and would need to be sent out or destroyed. The television set had been damaged during transport and Plaintiff's recourse was to seek reimbursement from the State Administrative Board. Defendant Butler asserted in interrogatory answers that it would have cost more to repair the television set than to replace the television set and Plaintiff was able to get a refund for the

6

damaged television set.  (ECF No. 38-6, PageID.362.)  Plaintiff asserts that Defendant Butler had no way to determine the cost of the repair.

The Equal Protection Clause commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.  To establish a violation of the Equal Protection Clause, an inmate must show that the defendant purposefully discriminated against him.  *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).  Such discriminatory purpose must be a motivating factor in the actions of the defendant.  *Id.* at 265-66.  "A plaintiff presenting a race-based equal protection claim can either present direct evidence of discrimination, or can establish a prima facie case of discrimination under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011).

Plaintiff's evidence to support his equal protection claim is that prisoner Harper, who is white, was able to send out his television set for repair and Plaintiff, who is African American, was not able to send out his television set for repair.  Plaintiff further asserts that Defendant Butler made the comment that Plaintiff was not prisoner Harper and "to look in the mirror."

Plaintiff's Step II grievance on the property was denied by Warden Jeffry Woods. (ECF No. 38-3, PageID.302.)  Warden Woods explained:

> Grievant rode in with a TV that was not working, a guitar amp and weight lifting gloves with straps.  A NOI was written by Officer Miller on 4/22/14 and was heard on the NOI on 5/9/14 by PC Butler. It was deemed that the TV was broken on transport and the grievant was to go through the State Administrative Board for reimbursement.  The guitar amp is not allowed at URF per OP 04.07.112D and must be sent out per PD 04.07.112.  The weightlifting gloves are not allowed at URF per OP 04.07.112,

> Attachment A as they have velcro straps and are not allowed at URF and they must be sent out as well.  Only items on the standardized property list are allowed to be retained if no longer allowed per policy.  These items are recreation equipment.
>
> Administrative Hearing by PC Butler on 5/9/14 is upheld.  The TV is damaged and the amp and gloves are both contraband in accordance with Attachment A, OP URF 04.07.112.  Regardless if some institutions allowed these items they are not allowed at this facility and they could be mailed out at prisoner's expense.  However, when grievant was asked at the Hearing if he has an address to send these items he stated, "No I don't want to send them anywhere.  Do what you guys are wanting to do with them."  Grievant was told they would be destroyed and he said, "ok".  The amp and gloves will be destroyed per policy and grievant will contact the Grievance Coordinator to begin the process for reimbursement for the damaged TV during transit.  No violation of policy exists.

*Id*.

Although, Plaintiff has presented some evidence that suggests a white prisoner was able to send out a television set for repair and that arguably Defendant Butler made a racial comment to Plaintiff, Plaintiff has not established that prisoner Harper's television had similar damage to his own television set.  Plaintiff's television set was damaged during transport and without any fault attributed to Plaintiff.  Plaintiff was able to seek reimbursement for his damaged television set.  Plaintiff has not shown that prisoner Harper had the opportunity to seek reimbursement for his television set or that he alternatively chose to send it out for repair.  Plaintiff has not shown that he was similarly situated to prisoner Harper.  Moreover, Plaintiff has failed to establish that his amp and gloves were not contraband or were considered contraband due to his race.  In the opinion of the undersigned, Plaintiff cannot establish that his equal protection rights were violated based upon Defendant Butler's decision that Plaintiff's amp and gloves violated prison policy and that Plaintiff needed to seek reimbursement for his broken television set.

8

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendant's motion for summary judgment.  Accordingly, it is recommended that Defendant's Motion for Summary Judgment (ECF No.  37) be granted and that this case be dismissed in its entirety.

Should the court adopt the report and recommendation in this case, the court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the undersigned recommends granting Defendants' motion for summary judgment, the undersigned discerns no good-faith basis for an appeal.  Should the court adopt the report and recommendation and should Plaintiff appeal this decision, the court will assess the $505 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505 appellate filing fee in one lump sum.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:    September 18, 2017            */s/ Timothy P. Greeley*
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE